please call the first case the attorney for the appellant Lisa Lange appearing for appellant Deshaun Nelson LA and GE yes Lisa Lange LA and GE for appellant Deshaun Nelson. Thank you Ms. Lange. And for the appellate? I'm Esther Joy Schwartz from Stalatum Schwartz. I represent Enterprise Leasing Company of Chicago. They are the citation respondent appellate. Okay thank you ladies. Each side will have 15 minutes to argue. Appellant I'm sure you'll want to rebut so please reserve from your allotted time whatever portion you'd like for your rebut. Appellant please proceed. May it please the court. Lisa Lange appearing for appellant Deshaun Nelson. Neither Illinois law nor the rental agreement limit the liability of Enterprise Leasing Company of Chicago a self-insured rental car company to the $50,000 per person $100,000 per occurrence minimum financial responsibility limits that are applicable to rental car companies that procure a policy of liability insurance or a bond. The plain language of the Illinois Motor Vehicle Codes does not limit the liability or refer to a limitation or maximum liability of self insurers at all despite being quite complete. Chapter 9 sets forth the requirement for owners of rental vehicles such as Enterprise to provide proof of insurance. They're given three different options to do so. Purchase of a liability insurance policy, a bond or self insurance. It also requires payments of any judgment within 30 days after it becomes final. Although specifically providing those minimums for bonds or insurance policies the vehicle code does not provide any applicable those who elect to be self-insured. This is no gap, no oversight. It's simply a recognition as to the nature of self insurance. And when a self insured there is no minimum financial responsibility amount which a bond or an insurance policy would be issued. Enterprises liability however is regulated by 5-7-502 of the vehicle code. That section requires the Department of Insurance to find the enterprise as an applicant to be self insured is possessed and will continue to be possessed of the ability to pay judgments against it. Again without specifying any minimum or maximum amounts. It is applicable to all self insurers and it requires payments of any judgment against any person covered by the certificate and arising out of the accident in which the motor vehicle covered was involved within 30 days. As recognized by this court in Hertz v. Garrett the financial responsibility statutes applicable to rental car companies merely prescribe minimum amounts. The agency must meet those to conduct business. It in no way imposes a maximum amount. Enterprise voluntarily elected to become self insured. In doing so it was required to submit an application to the Department of Insurance demonstrating the requirements I set forth earlier. In the application enterprise admittedly represented to the Department of Insurance that it retain the risk of loss up to $2 million per occurrence in third party liability auto claims. As a result it was granted a certificate of insurance. Legal enterprises legal obligations as a self insurer are clearly covered by 5-7-502. Enterprise elected to save the cost of purchasing an insurance policy. It elected to save the cost of purchasing a bond. It acted in accordance with its own selfish economic interests and instead acted to qualify as a self insurer. Had it purchased a liability policy or a bond it certainly could have easily limited its exposure to the minimum financial responsibility amount set forth in Chapter 9. As Illinois law... Enterprise choosing to be self insured was there anything that you're aware of that they could have done to expressly set forth what their maximum liability would be? It's our position your honor that as enterprise chose to be self insured that attempts to limit its exposure in the contract or the public policy. There are several public policy reasons we feel that such attempts to limit their exposure are unenforceable. Initially as I mentioned it made representations to the state of Illinois that it would be self insured, retain the risk of loss to pay claims up to $2 million per occurrence in third party liability claims. However, contrary to the representations made to the state, once a judgment creditor of one of its drivers attempts to collect a judgment against enterprise, they litigate, litigate, litigate and attempt to avoid paying anything but the bare minimum that they could have been restricted to had they simply purchased a policy of insurance. Given those representations we think enterprise certainly should be stopped as a matter of public policy. Further, we think that it is a deviation from the public policy of the state of Illinois to allow enterprise to limit its liability when section 5-7-502 expressly gives no maximum limit for a self insured entity. This is as Justice Myerscough suggested in the dissent in Fowler v. Alhorn. She suggested it would be against public policy to allow a rental car to limit its financial responsibility when Illinois law requires it to pay any judgment in the language set forth in the statute applicable to self insurers. Further, policy defenses often cannot be asserted against injured third parties who are innocent as against those parties in the context of minimum financial responsibility laws such as the ones at issue. I cited in the brief Huff v. Enterprises Rent-a-Car Midwest, it's our position that Nelson is a statutory beneficiary of enterprise's obligations to pay judgments under the minimum financial responsibility laws enacted by the state of Illinois. And therefore, any contractual restrictions are not binding on Nelson, although they may be binding on a renter. Finally, the terms of the rental car contract in this agreement we believe are vague. It expressly attempts, after denying any coverage at all, to limit its liability to applicable minimum financial amounts provided under Illinois law. As described precedingly, we do not believe there are any applicable minimum financial amounts under Illinois law for enterprises that are self-insured. Let me ask you this. If enterprise had elected to use a bond or an insurance company policy, which had expressed maximum liability for maximum limits involved, they would still be liable for any excess judgment, wouldn't they? If they elected to purchase a bond in excess of the minimum, yes. Yeah, they would still be liable for the excess limits. Certainly, just as enterprise as a self-insured should be liable for the full amount of any judgment. Why was this brought as a garnishment? It is because we are precluded against bringing a direct action against enterprise until we have a judgment. Unlike the case in Fowler v. Alhorn, we gave notice to enterprise of the motion for default and the default judgment. They were aware of the proceedings. They could have come in and intervened and protected their interests prior to judgment. We did it that way because it's procedurally correct in the state of Illinois and not in any attempt to be collusive or circumvent enterprise's right to come in and defend. It certainly could have chosen to do so. Does that conflict with health? It's mostly a timeliness issue. I'm sorry? It's a timeliness issue as well. Perfecting notice. Well, and I believe what Huff said was that notice was a minor policy requirement that could be excused and in Huff it was not excused because in that case the attorney expressly assumed the obligation to notify the insurance company of the suit. We complied with that obligation and therefore notified the insurer or enterprise, the non-insurer, self-insurer, I'm sorry. Either through time or other events is it preclusive for Artley to bring an action under a different designation? I believe that separate action would still be timely. I believe that there would be five years. So I think a direct action would still be timely against enterprise. And I'm a terrible timekeeper, I'm sorry. We, again, would like to point out that if the Fowler Court found the Illinois statutory framework regarding minimum financial amounts ambiguous, we certainly think that by referencing and trying to limit liability in a rental contract that the average person would also find that language ambiguous and it should be construed in favor of coverage for an innocent third party and against enterprise who would have authored the contract. We also take issue with the argument that enterprise makes that 5-7-502 applies only to judgments against enterprise for direct liability. If that were the case, enterprise would have virtually no liability as a self-insurer because it would be liable only in the event of a direct action because it was negligent either in providing a defective vehicle, renting to an unqualified driver, or if it were an employer agent of enterprise causing the accident. Additionally, we think that this does not violate the Graves Amendment. It's clear under the Graves Amendment that financial responsibility laws like that enacted by the State of Illinois are expressly excluded from the preemptive effect of the Graves Act and therefore we believe that enterprise is responsible for the entire judgment in this case under these facts. It had a choice. It elected to become self-insured and it failed to do so. Thank you. Thank you. I'd like to reserve the rest of my time for rebuttal. You certainly may. Thank you. Ms. Schwartz. Good morning, gentlemen. May it please the Court. Again, I'm Ms. Schwartz. I represent Enterprise Leasing Company of Chicago. The case involves really a very simple issue, which is what is the minimum financial responsibility limits for rental cars in Illinois? That's for recording purposes, not for amplification. Okay, thank you. Generally for personal autos, this Court well knows we have mandatory insurance in Illinois. We strive to put all the vehicles on the road with a 20-40 limit. And with respect to rental cars, Illinois is one of the few states that has decided that in the rental scheme we have to lift that from 20-40 to 50-100. So in Illinois we have a higher limit and that is really for the purpose of the consumer so that if you have a rental car on the street and it has an accident, the plaintiff or whoever is injured is assured at least 50-100 in minimum financial responsibility. This scheme has been going on for as long as I've been practicing law. But Enterprise has not sought to comply with the insurance code under Section 9. Sure, yes. They have? Absolutely. 9-101 is the only section that has sought to comply with respect to being a guarantor or an indemnitor of a customer's liability. When you're dealing with a renter or an additional driver or another party, the liability that the Enterprise has is solely as an owner of the vehicle. It's not insurance per se, but you are sued as the promising to give minimum limits to the accident or to the car. The only way you can do that is under 9-101 at SEC, which requires 10 sections you have to look at very carefully. In those sections they talk about three options. One would be the policy, which is traditional insurance. One would be the bond, and one would be the certificate of self-insurance. That is the certificate of self-insurance that's at issue in this case, which is under 9-101. In fact, the court could take judicial notice of the fact that I think 99-100 percent of the rental companies in Illinois are self-insured. They have all over time chosen to be self-insured for business reasons as well as financial reasons. So there's an importance to this as opposed to the traditional bond or the traditional self-insurance policy. But these, there's no linkage between Section 9 and Section 7. Even the administrative code says you can file under the Illinois Vehicle Code under 9-101 at SEC, or you can get a certificate of self-insurance under 7-502. I disagree respectfully, Your Honor. Why does it say that? It doesn't say that. It doesn't mention 7-502 anywhere in Section 9-101. It simply says in 9-102 that there are three alternatives. Well, doesn't it tell you if it doesn't say it in 9-01 that it's another reason why you wouldn't consider 7-502 to be connected to 5-01? Right. 7-502 is a red herring. 7-502 has absolutely nothing to do with this appeal. Counsel indicates that this case is all wrapped up under 7-502. But if we're under 7-502, there is not even a turnover order because counsel would get zero. Basically 7-502 deals with, quote, self-insurers. They can be rental insurers. They can be any self-insurer. 7-502 deals with somebody doing business in the state of Illinois that has to represent their health as a self-insured entity. That person can be sued directly. That person has liability. When there is a case against Enterprise, Enterprise has promised and told the legislature and, excuse me, the Certificate to the Department of Insurance that we have health, this is what it said, typically throughout the United States. When we have judgments against us, we have typically $2 million or above that we have $3 million and goes on to talk about other kinds of insurance. So the court should take a look at the financials that counsel is arguing judicially estops Enterprise because that was really just a representation of its health to do business in the state as a self-insured when it gets sued. And if you take a look at the certificate which is in the record, all it really says is that we've bestowed upon Enterprise the right to work as a self-insured entity. So this certificate has to do with Section 7-502, which has three requirements which say there has to be a judgment against a person, which we do not have in this case. The plaintiff chose not to sue Enterprise because Enterprise had no legal liability. In most cases, if there's a problem with spoliation, if there's a case with defective brakes or a tire or some type of negligence, Enterprise gets sued. If Enterprise is sued, it has promised that for its liability, it carries self-insurance. 7-502 is a red herring. Fallhauer, which is an excellent decision, very well reasoned, and if you look at it by Judge Appleton, he early on dismissed 7-502 and said it has nothing to do with this case. Even in the dissent, which counsel has asked this Court to embrace, the dissent doesn't mention 7-502 at all. The whole dissent was looking at 9-101 at sec. So 7-502 really has nothing to do with our case. And what we've argued is that if you look at it as somehow Enterprise has to indemnify a driver's judgment, you have created a grave situation because you're holding us liable for no other reason than we are an owner. And our certificate doesn't cover them. Now, counsel has craftily argued to the Court that somehow 7-502 applies because the plaintiff and the defendant are covered. Covered under what? The certificate? It doesn't mention them. This isn't a declarations page. This doesn't cover the loss. This doesn't cover an accident. This doesn't cover a person. All this does is say, Enterprise, you may go now and conduct your business. So for counsel to argue somehow that it could garnish, and we have to remember, as Justice Simon mentioned, this is a garnishment proceeding. So what asset are we holding on to in which this plaintiff, who is a foreign interloper, can come after us when we don't have a policy and we don't have a bond? It's certainly not our certificate of self-insurance because if that's the case, they get zero. So the only thing they can argue is the rental agreement. So whether they like it or not, they are under Section 9. And Section 9, if you take a look at it, is for renters for hire. This is the short term versus the long term lease section. If you're long term, you're under 20-40. If you're short term, you're under 50-100. That's the rental scheme. Now, let's go back just to the 80s a little bit because this Court had the most... So under that short term framework... The short term framework is in the statute. Okay. Under that short term framework, Enterprise has to post a bond or get a general insurance policy? Or it may have a certificate of self-insurance. Did it get a bond in this case? No. Did it get a general liability policy? No. So what did it have? It got a certificate. Of what? Self-insurance. In what amount? For 50. It's not... There is no amount because it promises the Court that it can meet a minimum financial responsibility limit that's imposed by the legislature, which chose to make the vehicles for hire at a higher rate than personal auto. Okay. When they filed, they said with the Illinois Department of Insurance, they said they could cover any loss on each occurrence, $200 million? It says that for third-party automobile liability and property damage, the company generally retains a substantial portion of the risk of loss. And then it goes on to say it typically retains up to $2 million per occurrence basis. And then it talks about $3 million and a deductible. It talks about that this is its health. It hasn't promised that this is the amount for self-insured customers. But you have to look at 9-101 at SEC. Go back to my Irish way of thinking. Sure. No bond. Correct. No liability policy. Correct. But they represent that they can meet the minimum. Which in this case is 50-100. But do they also imply that they can also meet something more than the minimum? But they choose not to be, and that's why you have to look at the rental agreement. Isn't that ambiguous? No, it's not, Your Honor, respectfully, because the rental agreement is wherever all the roads lead is to the rental agreement. When you rent a vehicle, you have the option to purchase insurance. If you choose not to purchase insurance, then you rely on your own personal auto policy to be first, and then the rental car scheme is second. Illinois has long since the 1980s held that it is not against public policy for any rental vehicle to be secondary as long as the 50-100 is met, which is the minimum limit in Illinois for rental vehicles. If we go back to Dotson, which is 1981, this court, this case involved a bond. Now remember, Your Honor, if you take a look at the language of the bond, it only says 100,000, correct? So why did this court in Dotson imply it was a 50,000 per person when there's no discussion of 50 in the bond? It's only 100. It's because, historically, it's 50-100 because it was raised from 20-40, because those are minimum limits around the country. You have to have it per person, and you have to have it per occurrence. And so they raised it to 50-100. So Dotson, which dealt with the bond, held that the minimum limit was 50. Then we get to insurance car rental case, which is the third district. Then we get to Huff v. Enterprise, Farm Bureau v. Alamo, and Fogle v. Enterprise. In every one of those cases, we're dealing with the self-insured. Alamo was self-insured. They discussed it. Enterprise was self-insured in Huff. Enterprise was self-insured in Fogle. In every one of those cases, the court discussed 50-100 as the scheme for the self-insured. There was a supplemental policy that was voided, and you went back, theoretically, to the 50-100. So this all reaches a threshold in Fellhauer, because now we have the exact issue being argued and very well reasoned by the court, which looked at Section 9, which looked at the language of the rental agreement, which looked at the legislative intent and said common sense is we're not singling out self-insured companies. And paid no attention to Section 7. It completely said 7502 had no place in this, because they agreed that 7502 dealt with judgments against Enterprise, not judgments against customers. Because when you contract with your customer, they have an option to get a million dollars. If you take a look at Section 17 of the rental agreement, when this is over and you have a chance to review it again before rendering your decision, it specifically says you have a million combined limit if you want to purchase the insurance. You will get $950,000 above from Empire, and we will maintain 50 under financial responsibility. Why would we be selling insurance for a million dollars if our coverage is unlimited? The scheme is 5100. That is all it says in the rental agreement. It says the owner's obligation is limited to the applicable minimum state financial responsibility amounts. The state's financial responsibility amount is 50-100 in rental cases. Whether it's a bond, whether it's a traditional policy, or self-insurance, you can only look to 9-101 at SEC. Now, if you take a look more carefully at 9-101 at SEC, for some reason counsel wants to take the self-insurance part and move it out to 7502. But it's in 9-101-2, and it's discussed again in 9-101-9, where it says the Secretary of State can cancel the certificate. And it's in 9-110, where it talks about penalties. So this is the section that discusses all three. Now, maybe discreetly the legislature, whether it was oversight or not, didn't have any reason to discuss the certificate being 50-100, because there is no real instrument that had to be filed, that had to be given notice, that needed cancellation requirements. So they discuss the bond in a few sections, and then they go and discuss the liability insurance. But then they come right back in 109 and 10 to discuss all three. So the self-insured certificate that's at issue in this case, and the one that we need to look at is 50-100. And if you look at the rental agreement, that's really all that's at stake. Is our rental agreement against public policy? That's a question that I wanted to think. You've got a default judgment of $600,000 that's been issued by a division of the Circuit Court of Cook County. And the amount, $75,000 of that $100,000, $50,000 went to one of the injured, $25,000 to another, and they're offering $25,000 to the plaintiff. Before the action was filed, Your Honor, the parties were in an interpleader-type situation before the court. When you say that we had notice, of course we had notice. We interpleaded or put the money before Judge White. He basically, before the $600,000 judgment, this was already fully argued. He said, and he agreed with us, that all we owe is 50-100. And so like Solomon, he was trying to figure out how to do it. 50 was paid to the more injured party, 25 to one, 25 to the other. After counsel rejected it and said, I'm going to change the Fellhauer law, he went and got a judgment. But your argument in your briefs is that the necessity to keep these caps on it is to permit people to rent cars at lower rates. No, I don't believe I've argued that. I said that I do think that because there is self-insurance in the competitive market, we can have certain lower rates so that the renter companies can't compete in a way. So yes, that is one of the basis for being self-insured. We also give them the option of buying a collision waiver of a personal protection for disability and a million dollars worth of limits. And if they choose it, they get a duty to defend. They get $100 million, and then we owe them a million. If they choose not to, which is what most of the decisions that I've cited in our brief have said, the insured or the renter can choose not to rely on minimum limits and go to his own policy. The company has a number of subsidiaries under Enterprise. It's just the holding companies. Is that right? Yes. You've got Dollar. You've got Budget. No, not Budget. They love to have Budget. No, Budget and Avis are one group. And then they have, I think, Alamo and Dollar. National. You have National. You've got not them, but you've got Payless and Thrifty. I mean, you're talking every single company right now is self-insured in Cook County. And if you decide that there's an unlimited cap in Cook County, you have forced them all to leave the state or to only have accidents for the fourth district controls. You think they'll really leave the state? I think there's a problem having an unlimited cap. Or would they be forced, quote, forced, to buy liability insurance for 50, 100? I don't know if they would be forced to buy liability insurance. You know they're not going to leave the state. Well, truthfully, Your Honor, the decision isn't mine to be made, but I do believe that they would have to appeal this to the Supreme Court, obviously. That's not leaving the state. Right. But I do think that I don't know what they would do, truthfully, and I don't think they should have to buy insurance or a bond. None of them have because they've done that for 10 to 15 years and have decided that the self-insurance scheme is far better and works to their benefit to the customers. And this is what they've chosen. This is what they've all chosen to do, not just Enterprise. And this has been upheld. Why does 9-102 say you can get a certificate of self-insurance and then you're telling them they can't? So they have three choices under Section 9, and you're telling them they can only pick one and two because somehow they've been singled out, which is what Judge the dissent said in Fellhauer. They've been singled out because they're not buying insurance. And I mean, when you buy- Could you please conclude? Okay. Respectfully, Your Honor, I believe that the court should affirm the judge's turnover order, which would be $25,000 without interest and costs. I would like to respond just briefly to a question that you said about excess liability. There has never been a case in Illinois where the enterprise or any carrier owes more than minimum limits because of an excess liability theory. They only owe the minimum limits. They don't owe because of, quote, bad faith or Olympia Fields. That is one of the other reasons that they choose to self-insure, is because they are not traditional under the insurance code. They're not subject to Olympia Fields. They don't have UM and UIM. There are a host of reasons for self-insurance. But you have a lot of risk insurance for other millions and millions of dollars. For their liability. That's when enterprise is sued. Enterprise is sued in every single case that I've ever defended, enterprise gets named. If they don't get named under a bogus agency theory, they get claimed that the brakes weren't working. If enterprise gets sued for premises liability or for auto, they have a healthy self-insurance and insurance policies that cover them. If you make them now a guarantor of every driver's, and this is an unauthorized driver, mind you, so to make this finding where in the past the courts have held for unauthorized drivers, we'll give them 50, 100, but now you're giving them unlimited. I mean, this really does turn the scheme on its head. So I would respectfully ask the court to affirm and find only in favor of $25,000 exclusive of interest and costs to the judgment creditor. Thank you. Thank you. Brief rebuttal. Thank you, Your Honor. I would just like to point out that if all of the companies are self-insured now, obviously the rental car companies have found a cost-effective way to avoid paying claims for injuries caused by the use of the rental cars by avoiding purchasing the insurance policies or the bonds. And to allow that to continue has tremendous public policy implications for the State of Illinois and the financial responsibility laws were enacted to protect the public from injuries without coverage. I would just ask that I would like to point out also that as far as Feller, the petition for leave to appeal to the Supreme Court was granted. I think that it is a case that was not correctly decided, and we would respectfully request this court to reverse the decision of the circuit court and enter a judgment in the full amount against Enterprise with costs and interest. Thank you. Thank you for your excellent briefs and the argument. Court is going to be briefly adjourned in order to make a panel change. We'll be in recess for a very short time.